No. 1,650.

## CLEVELAND, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY *v.* THE MOLINE PLOW COMPANY ET AL.

COMMON CARRIER.—*Bill of Lading.—Delivery of Goods to Third Person.—Fraudulent Possession.*—Where in an action against a common carrier upon a bill of lading to recover damages for failing to carry goods and delivering them to a stranger, it is answered that the goods were not the property of the plaintiff, but of another, whose assignee for the benefit of creditors had seized the goods and taken them away before shipment, a reply which alleges that the assignor had obtained possession of the goods by falsely and fraudulently representing to plaintiff that he had a contract with the plaintiff for the purchase of the goods, is sufficient on demurrer.

SAME.— *Consignee.— Presumption of Ownership. — Showing Real Party in Interest.*—While the consignee in a bill of lading is presumed to be the owner of the goods and the real party in interest, still in a complaint thereon by a person other than the consignee it is competent to aver and prove that the plaintiff was the owner and the real party in interest, and that both consignee and consignor were the plaintiff's agents.

SAME.—*Delivery to Third Person.—Burden of Showing Title.—Sale.— Agent.—Limitation of Power.*—Where, in an action for the breach of a contract to carry goods, the carrier answers a delivery of the property to a person other than the plaintiff and alleges title in such third person, the burden of showing that the person to whom possession was yielded was the rightful owner is upon the defendant, and under a plea of general denial to this answer the plaintiff may show his own title, such as that the goods were sold by an agent without authority to make sales, for instance, a mere transfer and storage agent.

VOL 13—15

C., C., C. and St. L. 'R. W. Co. *v.* The Moline Plow Co. *et al.*

ESTOPPEL.—*In Pais.—Application of Doctrine.*—The doctrine of estoppel *in pais* has no application where everything is equally known to all the parties, or where the party sought to be estopped was ignorant of the facts out of which his rights sprung, or where the other party was not influenced by the acts asserted in estoppel.

PERSONAL PROPERTY.—*Right of Owner to Seize.—Trespass.*—The rightful owner of goods may seize them and take them into his possession wherever he finds them, provided he does not commit a breach of the peace or violate any other law; but if, in seizing his goods, he also takes other goods which do not belong to him, as to the latter he becomes a trespasser and liable to the owner.

PRACTICE.—*Judgment.—Motion for Relief Outside of Issues.*—A motion by a party for a judgment giving him relief upon a matter not within the issues will be properly overruled.

From the Hendricks Circuit Court.

*B. K. Elliott* and *W. F. Elliott*, for appellant.

*T. J. Cofer* and *C. C. Hadley*, for appellees.

LOTZ, J.—The appellee the Moline Plow Company brought this action against the appellant to recover damage for the alleged breach of conditions in a bill of lading. The complaint alleges that the defendant, a common carrier, undertook for hire to carry certain goods belonging to plaintiff from the town of Brownsburg, Indiana, to the city of Indianapolis. That a written contract or bill of lading was executed, in which one J. C. Smalley was named as the consignor and the Union Transfer and Storage Company of Indianapolis was named as the consignee; that both the consignor and consignee were merely the agents of the plaintiff, and that the title and ownership of the goods were in the plaintiff, of which facts the defendant had knowledge at the time the bill was issued. The breach alleged is that the defendant did not safely carry and deliver the goods to the plaintiff or its agent or any one for it, and did not carry them at all, but delivered them to a stranger.

The appellant filed an answer to the plaintiff's complaint in three paragraphs, the first being the general denial.

In the second paragraph the appellant admitted having received the property mentioned in the complaint, and that it had issued a bill of lading therefor, but averred that the property was not the property of the Plow Company; that it was the property of one John A. Faulkner; that the Plow Company had wrongfully and unlawfully obtained possession of said property before delivering it to the appellant; that after the property was delivered to the appellant, John R. Jones, the assignee of said Faulkner, demanded possession of the property, and seized and carried it away; that the said Jones had full right to the possession of the said property at the time he seized and carried the same away.

The third paragraph of the appellant's answer admits that the appellant received the property and issued a bill of lading therefor, but contains the averments that on the 25th day of July, 1893, John A. Faulkner was the owner and in possession of said property; that on said day the said Faulkner made an assignment to John R. Jones for the benefit of his, the said Faulkner's, creditors; that the deed of assignment covered the property involved in this action; that the said Jones, as such assignee, took possession of the said property; that afterward, without the consent of the said Jones or the said Faulkner, the appellee Plow Company entered the warehouse where the said goods were stored and wrongfully and unlawfully carried the same, together with other goods, away and delivered them to the appellant; that the appellant issued a bill of lading for said goods, but before they were shipped, and while they were on appellant's platform ready for shipment, Jones, the assignee

of Faulkner, took possession of the goods and carried them away without the consent or permission of the appellant.

To the second and third paragraphs of answer the Plow Company filed a reply in two paragraphs; the first being the general denial. The second paragraph of reply alleges in substance that prior to the taking possession of the goods by Jones and prior to the issuing of the bill of lading Faulkner was insolvent; that the Union Transfer and Storage Company of Indianapolis was the plaintiff's agent for the storage, transfer and shipment of plaintiff's goods; that the Transfer and Storage Company had in its possession large quantities of plaintiff's goods for shipment, to plaintiff's customers; that Faulkner, being aware of this fact, falsely and fraudulently represented to the Transfer and Storage Company that he had a contract with the plaintiff for the purchase and shipment of goods, and that he wanted certain articles and wanted them shipped immediately to supply the wants of one of his customers; that the Transfer and Storage Company, relying upon such representations and believing them to be true, shipped the goods described in the bill of lading to Faulkner, at Brownsburg, Indiana; that on the same day that Faulkner received the goods he made an assignment to Jones for the benefit of his creditors; that the statement and representations of Faulkner to the Union Transfer and Storage Company were false and fraudulent in this, to-wit, that Faulkner had no contract with the plaintiff for the purchase and shipment of the goods, but on the contrary the plaintiff had refused to enter into a contract with him; that Faulkner had no orders or purchasers for the goods, but on the contrary his sole purpose in obtaining an early shipment of the goods was to prevent the Transfer and Storage Company from communicating

with the plaintiff and ascertaining that Faulkner had no contract for the purchase of the goods, and to enable him to get possession of said goods in anticipation of a sale or an assignment, and to defraud the plaintiff out of the value of the goods. It is further alleged that the plaintiff's agent demanded the goods of Faulkner; that Faulkner gave possession to plaintiff's agent, who delivered them to appellant for shipment. A demurrer for want of facts was overruled to this paragraph. The ruling on this demurrer presents the first error assigned.

It may be stated generally that a common carrier of goods for hire is a bailee, and as such is an insurer against loss or injury from whatever cause arising, except only inevitable accident and the public enemy. *Evansville, etc., R. R. Co.* v. *Keith,* 8 Ind. App. 57.

The carrier is bound to account for the goods and their safe delivery. It is a familiar rule that in ordinary cases the bailee can no more dispute the bailor's title than a tenant can dispute that of his landlord. But to this general rule there are exceptions. He may always show, and it is a good defense, that he has in good faith or by legal process yielded the possession to the rightful owner, the person having the lawful right to the possession the holder of a superior or paramount title to that of the bailor. It is a good defense even though the goods were taken by force and against his consent, if the taking was by the lawful owner and the person entitled to the possession. Surrendering to the rightful owner is in legal effect an accounting, for that is what the bailor himself was in law required to do.

It would be unjust and against conscience to allow the shipper or bailor under the circumstances above indicated to recover for the value of the goods. The bailee, or carrier, is bound at his peril to deliver the goods to the rightful owner. He is also bound to the

shipper or bailor under the contract to carry the goods. If he discharges the first, it would be the height of injustice to hold him liable on the last obligation also.

The above propositions are sustained by abundant authority. Lawson's Rights and Remedies, Vol. 4, p. 2914; Hutchinson on Carriers, section 404; *King* v. *Richards*, 6 Whart. *418; *The Idaho*, 93 U. S. 575; *Bliven* v. *Hudson, etc., Co.*, 36 N. Y. 403; *Western, etc., Co.* v. *Barber*, 56 N. Y. 544; *Bates* v. *Stanton*, 1 Duer 79; *Stephens* v. *Vaughan*, 4 J. J. Marsh. 206; *Biddle* v. *Band*, 6 Best and Sm. 225; *Sheridan* v. *New Quay Co.*, 4 Com. B. 618 (Eng. C. L. R.).

The appellant by the second and third paragraphs of its answer undertook to show that it had yielded or surrendered the possession of the property to the rightful owner. In filing these answers it is presumed that it had scanned the whole title, and willingly assumed the burden of showing that the rightful ownership was in some other person than the plaintiff, the person to whom it surrendered the possession.

Ordinarily, when a sale of goods on credit is sought to be set aside on the ground of the insolvency of the purchaser, it must be made to appear that the purchaser concealed his insolvency from the vendor, and that he had no intention to pay for them at the time the purchase was made. But the fraud alleged in the second paragraph of the reply is that Faulkner falsely represented to the Plow Company's agent, that he had a contract with it for the purchase of goods. It is the false representation concerning this contract that constitutes the gravamen of the fraud. It is sufficient to withstand the demurrer.

On request of the appellant, the court made the following special finding of facts:

"1. In July, 1893, the plaintiff was a manufacturer

of agricultural implements in the State of Illinois, and the Union Transfer and Storage Company of Indianapolis was the duly constituted agent of the plaintiff to distribute the plaintiff's products throughout Indiana, but had no authority to sell or deliver goods, except upon orders of the plaintiff.

"2. On the 24th of July, 1893, the said Union Transfer and Storage Company, without order or authority from the plaintiff, shipped from its warehouse in Indianapolis, to one John A. Faulkner, at Brownsburg, Ind., upon his order, of the plaintiff's goods, three sulky plows, six breaking plows, and three steel harrows, all of the value of $206.96.

"3. Said Faulkner, when he received said goods on the 24th day of July, 1893, knew that he was insolvent, and was at the time considering an assignment for the benefit of his creditors, and at 7 o'clock on the next morning (July 25) duly executed and delivered to the defendant, John R. Jones, a deed of assignment, conveying to said Jones all his property for the benefit of all his creditors, consisting chiefly of a stock of hardware and agricultural implements. Jones, upon the delivery of the deed, accepted the trust and took possession of the assigned property, and placed the assignor in temporary charge. Within an hour after the execution of said agreement, one Smalley, an agent of the plaintiff, called upon said Faulkner and demanded possession of the said goods that had been shipped to him the day before, by the Union Transfer and Storage Company. Faulkner referred Smalley to his assignee, Jones. Smalley made a like demand upon said assignee Jones, which was refused. In the afternoon of the same day, the door of the warehouse where said goods were stored being open, Smalley, acting for the plaintiff, without authority from said Faulkner or Jones, entered and car-

ried away the goods above described. Smalley also took away from said place, at the same time, other goods the plaintiff had some weeks before sold to Faulkner, and which were unpaid for, to-wit: one hay rake and twenty-four plow-shares, all of the value of $34.74. Smalley, about 3 o'clock P. M. of same day (July 25), delivered all of said goods to the defendant railway company, as a common carrier of freight, at the station in Brownsburg, Ind., and said railway company then and there executed *and delivered to Smalley a contract* whereby said railway company undertook to transport and deliver said goods to the Union Transfer and Storage Company at Indianapolis, Ind., for storage. That the defendant railway company did not transport and deliver said goods to the said Union Transfer and Storage Company. That the plaintiff notified the defendant railway company of its non-delivery of said goods within thirty days after the same were delivered to it at Brownsburg, and after notice and within thirty days said defendant denied liability for such default. That said station at Brownsburg was established by the defendant railway company as a regular station for the stopping of all local freight trains and as a place whereat to receive freights for transportation. That the defendant railway company had a regular local freight train that carried freights similar to the goods above described to Indianapolis passing said station at Brownsburg going to Indianapolis about 4 o'clock each morning. That said goods remained at said Brownsburg station, unshipped, until about 9 o'clock in the forenoon of July 27, at which time the defendant John R. Jones, as assignee of John A. Faulkner, demanded of said railway company the possession of said goods, as the property of his said trust, which demand was refused, and said Jones thereupon, without legal process, or other

authority, seized upon and removed all said goods out of the possession of said railway company, and, upon a general order of court, advertised and sold all of said goods, in November following, as the property of his said trust.

"4.  That the plaintiff made no further demand of said Jones for the possession of said goods and has filed no claim therefor against the estate of said Faulkner."

On the above finding of facts the court stated the following conclusions of law :

"1.  That the plaintiff, on the 25th day of July, 1893, at the time it delivered the same to the defendant, C., C., C. & St. L. R. W. Co., for transportation and delivery to the Union Transfer and Storage Company of Indianapolis, Ind., as found in No. 3 of the foregoing finding of facts, was the owner and entitled to the possession of the three sulky plows, six breaking plows and three steel harrows, described in No. 2 of the foregoing finding of facts, and of the value of $206.96.

"2.  That the plaintiff, on the 25th day of July, 1893, at the time it delivered the same to the defendant, the said C., C., C. & St. L. R. W. Co., for transportation and delivery to the Union Transfer and Storage Company of Indianapolis, Ind., as found in No. 3 of the foregoing finding of facts, was not the owner, nor entitled to the possession of the one hay-rake and twenty-four plow shares, all of the value of $34.74, described and set forth in said finding No. 3, and that the defendant, John R. Jones, as assignee of John A. Faulkner, was the owner and entitled to the possession thereof.

"3.  That the plaintiff is entitled to recover of the defendant, C., C., C. & St. L. R. W. Co., the sum of $209.96 and costs.

"4.  That upon payment of said judgment to the plaintiff, the defendant, C., C., C. & St. L. R. W. Co., is

entitled to have its claim for the amount of principal of said judgment paid by it allowed against the estate of the said John A. Faulkner, if paid within the period of six months from this date."

The appellant excepted to the conclusions of law and moved for judgment in its favor on the findings. The court overruled the exceptions and the motion. These rulings are assigned as error and as they both present the same questions, may be considered together. Various objections are made to the sufficiency of the findings to support the conclusions drawn by the court and to the judgment rendered.

It is insisted that the findings show that the Moline Plow Company was not the real party in interest; that in the bill of lading, which is the foundation of the cause of action, Smalley is named as the consignor and the Union Transfer and Storage Company the consignee; that the Moline Plow Company is a stranger to the contract—the bill of lading; that the law presumes the consignee therein named to be the owner of the goods and that its terms cannot be varied or contradicted by parol.

A bill of lading is both a receipt and a contract. In so far as it is a receipt it may be modified, explained or contradicted by parol, but in so far as it is a contract and when free from ambiguity and in the absence of fraud, concealment or mistake, it cannot be explained, modified, contradicted or added to by parol. *Louisville, etc., R. R. Co.* v. *Wilson*, 119 Ind. 352.

It is also true that the law presumes the consignee to be the owner of the goods and the real party in interest, but this presumption is not conclusive. If facts be pleaded showing that some other person is the real party in interest, this presumption will not prevail. *Pennsylvania Co.* v. *Poor*, 103 Ind. 553.

In the light of this presumption the ownership would be deemed to be in the consignee; but the ownership even if it had been expressly stated in the bill would have been but a mere recital; it would have formed no part of the contractual obligations and might under proper averments have been varied by parol. The complaint here does aver the true ownership, and the finding is that both Smalley and the Union Transfer and Storage Company were the agents of the plow company in the shipment of the goods.

The appellant further contends that the proper legal conclusion to be drawn from the facts found is that Faulkner, or his assignee, Jones, was the rightful owner of the property; and that as it surrendered the possession to the lawful owner, it is not liable under the rules above stated. In support of this contention appellant's learned counsel assume that the burden of establishing the fraud of Faulkner in the purchase of the goods, and that the sale made by the plow company's agent was in excess of the agent's authority, rested upon the appellee, the plow company.

It must be borne in mind that this action is based upon the breach of the conditions of a written contract—the bill of lading. It was an undisputed fact, and the court so found, that the consignor and the consignee both were merely the agents of the plow company. When the plaintiff made this appear and introduced the contract in evidence, showed the breach thereof and the damages resulting, it had established its right to recover. To defeat this right the burden rested upon the appellant to establish its affirmative answers.

The appellant introduced into this action the controversy concerning the title. The burden of showing that the person to whom it yielded the possession was the rightful owner, rested upon it.

When the title to personal property is involved, the general rule is that the party asserting title must stand or fall upon the strength of the title asserted and not depend upon the weakness of the title of his adversary. As a sequence, the party disputing the title asserted, may show property in himself or in some third person, for in each instance it is sufficient to overthrow the title asserted, and such proof may be made under the general denial without special plea.    It is true that there are some affirmative defenses and affirmative matters in avoidance, which may be given under the general denial in which the burden rests upon the party asserting them. Appellant makes a vigorous assault upon the special findings, asserting that the burden of establishing the fraud pleaded in the reply, rests upon the plow company and that the ultimate fact of fraud is not found.  The general rule is that when fraud is relied on it must be specially pleaded and proved as alleged.    Whether or not defenses to actions which involve title to property form an exception to this rule and whether the burden of proving fraud rested upon the plow company, or the burden of proving the absence of fraud rested upon the appellant, we need not decide in the view we take of this case.

We have the finding that the Union Transfer and Storage Company was the agent of the plaintiff to distribute its products throughout Indiana, but had no authority to sell or deliver its goods except on the order of the plaintiff ; that the Transfer and Storage Company without order or authority from the plaintiff, shipped the goods to Faulkner.  The appellant asserted that Jones, the assignee of Faulkner, was the rightful owner and that it yielded the possession to him.   The plow company had the right under its general denial to prove that it was the owner.   It might have shown that

the goods were stolen from it, or that Jones took them by force and against its consent; it might also show that its agent for storage sold them without authority to do so. We have here a sale made by an agent who had no authority for that purpose. An agent for one purpose only cannot lawfully do another act and bind his principal. An agent for the storage and transfer of goods cannot lawfully sell the same. Mechem Agency, sections 323, 361; *Jeffry* v. *Hush*, 49 Mich. 33; *Wood* v. *Goodridge*, 6 Cush. 117; *Switzer* v. *Wilvers*, 24 Kas. 384.
. The appellant, however, contends that the sale was valid because made by a person having the *indicia* of title; the possession, and the right to ship. This contention is based upon an estoppel *in pais*. The general rule is that an estoppel must be pleaded in order to be available. But the reply is the end of pleading under our code. It is clear that the appellant might have availed itself of an estoppel by pleading it in an answer. Whether or not it can avail itself of an estoppel in order to defeat a reply we need not determine, for the finding here falls far short of an estoppel. The vital principle of an equitable estoppel is that of fraud. He, who by his language or conduct leads another to do what he otherwise would not have done, will not be permitted to subject such person to loss or injury by disappointing the expectations upon which he acted. The doctrine has no application where everything is equally known to all the parties, or where the party sought to be estopped was ignorant of the facts out of which his rights sprung, or where the other party was not influenced by the acts asserted in estoppel. There is nothing in the findings to show that it was customary for the Union Transfer and Storage Company to ship goods without an order from the plow company, or that either Faulkner,

his assignee, or the appellant, was misled or deceived by its conduct.

The finding shows that the plow company, by its agent, entered the warehouse of the assignee, Jones, and without any authority from him, seized and carried away the property which had been shipped by the Transfer and Storage Company, and in so doing also seized and carried away other property belonging to the assignee Jones.

Appellant's counsel assert that the plow company had no right to seize its own property forcibly, but that if it be conceded that it might lawfully do so, if in the exercise of such right it seized property which did not belong to it; it became a tresspasser *ab initio*, a wrong-doer, not only as to the goods to which it had a right, but as to all the goods it seized, and its whole proceeding was illegal.

We are of the opinion that the rightful owner of goods may seize them and take them into his possession wherever he finds them, provided he does not commit a breach of the peace or violate any other law.    It is true that he cannot abuse this privilege, and if he seize goods which do not belong to him, he will be deemed a tresspasser *ab initio*, a wrong-doer, and liable to the person whose goods were wrongfully taken; but we fail to see what application this rule has to the case in hand.    The ownership of the property was not changed by the seizure made either by the plow company's agent or by the assignee.    The plow company did not recover in this proceeding for the goods which its agent unlawfully took.

John R. Jones, the assignee of Faulkner, was made a party defendant, upon the application of the appellant, Jones filed answers to the complaint.    But the appellant filed no cross-complaint against Jones.    The appellant

moved the court for a judgment in its favor against Jones, and to make the judgment a. preferred claim against the assets in his hands. This motion was overruled. This ruling is one of the errors assigned. This motion asked for something not within the issues, and there was no error in overruling it.

The appellant also filed a motion to modify the judgment so as to provide that the appellant's claim in case it paid the amount of the judgment to the plow company should be a preferred claim against the assets in the hands of Jones, and should be paid prior to the distribution of the assets of the estate to the general creditors This motion was overruled.

This ruling constitutes the last assignment of error discussed by counsel.

We can conceive of conditions where the assets of an insolvent's estate might be charged with a preferred claim to the extent of moneys realized from property which did not belong to it, but there is nothing in the finding here to show how much the insolvent's estate realized from the property, nor was there any relief of the kind asked for contained in the pleadings. The motion was properly overruled.

Judgment affirmed.

Filed October 8, 1895.